BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
IRICEL E. PAYANO (Cal. Bar. No. 349141)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0762 / (213) 894-3899
    Facsimile:  (213) 894-0141
    Email:  Haoxiaohan.Cai@usdoj.gov
           Iricel.Payano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BOBBY NUNEZ,<br><br>    Defendant. | No. 2:25-CR-779-FLA<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  December 16, 2025<br>Trial Time:  8:30 a.m.<br>Location:  Courtroom of the Hon. Fernando L. Aenlle-Rocha |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Haoxiaohan Cai and Iricel E. Payano, hereby submits its Trial Memorandum.

    In compliance with the Court's Standing Order, the government conferred with defendant's counsel to determine whether the parties agreed or disagreed on the factual summary, statement of charges, time estimate of the government's case-in-chief, and legal and evidentiary issues laid out herein; defendant's counsel informed the

government that defendant is agreeable to Part III of this Trial Memorandum, but not to Parts I, II, or IV.

| | |
|---|---|
| Dated: December 1, 2025 | Respectfully submitted,<br>BILAL A. ESSAYLI<br>First Assistant United States Attorney<br><br>ALEXANDER B. SCHWAB<br>Assistant United States Attorney<br>Acting Chief, Criminal Division<br><br>　　　　　　/s/<br>─────────────────────<br>HAOXIAOHAN CAI<br>IRICEL E. PAYANO<br>Assistant United States Attorneys<br><br>Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

**TRIAL MEMORANDUM**

**I.  FACTUAL SUMMARY**

At around 8:00 a.m. on August 15, 2025, three federal law enforcement officers, HIS Special Agent R.E., ICE Deportation Officer J.A., and Deputy United States Marshal J.B. were at the Da Vinci apartment complex in Downtown Los Angeles to conduct an arrest of a third-party, T.M., for a violation of 8 U.S.C. § 1325, illegal entry by an alien. (Dkt. 1 ("Complaint") at 4.)  To arrest T.M., agents use two law enforcement SUVs, both of which had their emergency red and blue lights activated, to box in the Tesla that T.M. was driving at the entrance of the Da Vinci Apartments' parking structure. (Id.)

While the officers were at the Tesla's passenger side door attempting to arrest T.M., defendant approached the officers. (Dkt. 24 at 4).  Witness testimony, as well as recordings taken at the scene, will show that defendant appeared to be recording the arrest, while yelling at the officers, and pushing the passenger door of the Tesla into the officers' bodies multiple times.  (Id.; see also, Dkt. 25, Exhibit (Ex.) A at 01:26 to 01:52.)  In response, DUSM J.B. informed defendant that they were conducting a "federal investigation" and asked that he stop pushing the car door. (Id.; Dkt. 1 at 5.)  Defendant continued yelling at the officers while gesturing back in the direction of the government vehicle and defendant's tow truck, which was parked on the opposite side of Fremont Street. (Dkt. 24 at 4; Dkt. 25, Ex. A at 01:46 to 01:52).  Then the defendant ran off toward his tow truck and proceeded to tow the government SUV, which still had its emergency lights on. (Dkt. 24 at 4.)

Witness M.F., who was on his morning commute, found his path down nearby Temple Street obstructed by a tow truck towing a police car which was blocking both lanes of traffic.  After speaking with one of the officers,, Witness M.F., joined by witness W.L.,  recovered the government SUV and brought it back to the officer.

On August 16, 2025, at approximately 2:20 p.m., HSI agents located a white Dodge Ram matching the description of the tow truck, parked in a residential space of

1  the Da Vinci Apartments' parking structure.  (Dkt. 1 at 7).  The agents noted writing on
2  the rear driver's side panel of vehicle that read: "ITRA Towing, CA 612175
3  DOT3909020."  (Id.)
4      HSI conducted a records check with the Department of Transportation and
5  California Secretary of State for Insured Towing Roadside Assistance and Recovery,
6  Inc., or ITRA.  The incorporation paperwork showed that defendant was listed as the
7  secretary of ITRA. (Dkt. 1 at 7).   HSI located defendant's profile on social media,
8  including Facebook. (See, e.g., id. at 6-9).  Defendant's Facebook page contained photos
9  of him, and videos of his truck, including a video that defendant posted with a white
10 truck matching the description of tow truck that defendant had captioned, "new bitch."

11 **II.   STATEMENT OF THE CHARGE AND ELEMENTS**

12     Defendant is charged with theft of government property in excess of $1,000, in
13 violation of 18 U.S.C. § 641.

14     **A.   Elements of the Offense**

15     To prevail in its case against defendant, the government must prove at trial: (1) the
16 defendant knowingly stole property of value with the intention of depriving the owner of
17 the use or benefit of the property; (2) the property belonged to the United States; and (3)
18 the value of the property was more than $1,000.  Ninth Cir. Model Jury Instructions, No.
19 23.1 (2022 ed.).

20     **B.   "To Steal" Explained**

21     A defendant can be found to have stolen property so long as there was appreciable
22 change of location and any deprivation of use, including temporary deprivation. See
23 Fifth Cir. Model Jury Instruction, No. 2.27 (2024 ed.).

24     As outlined in the Joint Disputed Jury Instructions (Dkt. 1), while the Ninth
25 Circuit has not included this clarification in its model instructions, multiple sister circuits
26 have done so.  Furthermore, numerous courts of appeals have confirmed that § 641
27 applies to temporary deprivations.  See, e.g., United States v. Baker, 928 F.3d 291, 297
28 (3d Cir. 2019) (noting that the Supreme Court in Morissette v. United States, 342 U.S.

246, 266 n.28 (1952) gave wide berth to the scope of § 641, and that "[a]ccordingly, courts have followed that guidance and concluded that intent to temporarily or permanently deprive the government of its money satisfies the intent element of § 641); see also United States v. Dowl, 619 F.3d 494, 500-01 (5th Cir. 2010) (collecting cases from the Fifth, Seventh, Eighth, and Eleventh Circuits interpreting § 641 to include temporary deprivations).

      **C.**    **Defendant's Knowledge Regarding Government Property**

The government need only prove that defendant seized property that did not belong to him; not that defendant knew the property belonged to the government. Again, while this point is not included in the Ninth Circuit's model instructions, such a clarification is consistent with the notes to the Ninth Circuit Model Jury Instructions for § 641. See Comment to Ninth Cir. Model Jury Instructions, No. 23.1 (2022 ed.) ("Knowledge that stolen property belong to the United States is not an element of the offense.") (citing Baker v. United States, 429 F.2d 1278, 1279 (9th Cir. 1970)). Furthermore, as noted in the Joint Disputed Jury Instructions (Dkt. 1), such a modification is consistent with Supreme Court precedent as set forth in Morrisette, 342 U.S. at 270-271.

**III.**    **ESTIMATED LENGTH OF CASE-IN-CHIEF**

In total, the government estimates that its case-in-chief (with a reasonable allotment for cross-examination) will be approximately one to two days. The government intends to call the following witnesses[1] in its case-in chief, and anticipates the noted estimates for their testimony, including cross examination:

    (1) Deputy U.S. Marshal J.B. (75 minutes)

    (2) HSI Special Agent R.E. (60 minutes)

    (3) Witness M.F. (40 minutes)

    (4) Witness W.L. (35 minutes)

---

[1] The government reserves the right to call additional witnesses in either its case-in-chief or rebuttal case (if any).

3

     (5) HSI Special Agent C.L. (40 minutes)

     (6) HSI Analyst S.L. (75 minutes)

     (7) ICE Enforcement and Removal Operations Employee S.F. (50 minutes)

     (8) HSI Special Agent F.J. (30 minutes)

### IV. RELEVANT LEGAL AND EVIDENTIARY ISSUES

#### A. Pending Motions

The government filed one motion in limine, on November 26, 2026, to exclude irrelevant, prejudicial evidence, of a third-party arrest, and to exclude nullification evidence. (Dkt. 24.)  Defense counsel has stated that they will object to this motion in substance and on timeliness grounds. (See id.).  The motion remains pending before the Court and is scheduled to be heard at the Pretrial Conference on December 5, 2025.

#### B. Photographs and Videos

The government intends to introduce photographs and video footage at trial. Admitting a photograph or video into evidence requires that the proponent meet only a very low hurdle.  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (interpreting Fed. R. Evid. 901(b)(1)).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Photographs and videos should be admitted so long as they fairly and accurately represent the event or object in question.  See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture."  32 McCormick on Evid. § 215 (7th ed.).  Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

### C. Defendant's Statements

Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; a defendant may not elicit his own prior statements. See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam). To permit otherwise would place a defendant's statements "before the jury without subjecting [herself] to cross-examination, precisely what the hearsay rule forbids." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (holding that the district court properly barred defendant from seeking to introduce his exculpatory post-arrest statements through cross-examination of government agent); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross examination.").

When the government admits some of a defendant's prior statements, the door is not thereby opened to the defendant to put in all of his out-of-court statements. This is because, when offered by defendant, the statements are still inadmissible hearsay. See Fed. R. Evid. 801(d)(2); see also United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985) (defendant's exculpatory statement inadmissible when offered by defense).

Similarly, a defendant's exculpatory statements are not admissible under Federal Rule of Evidence 106, the "rule of completeness." Evidence that is inadmissible is not made admissible by invocation of the "rule of completeness." See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible notwithstanding Rule 106). As the Ninth Circuit noted in Ortega, a defendant's non-self-inculpatory statements are inadmissible hearsay even if they were made contemporaneously with other self-inculpatory statements. Ortega, 203 F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599 (1994)). The "rule of completeness" may require that all of a defendant's prior statements be admitted only where it is necessary to explain an admitted statement, to place it in context, or to avoid misleading the trier of fact. See,

e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). The doctrine does not, however, require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages. See Ortega, 203 F.3d at 682-683; Marin, 669 F.2d at 84. The burden is on the defendant to identify a basis for admitting additional portions of the defendant's prior statement. United States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996).

### D. Scope of Cross-Examination of Defendant

If the defendant testifies at trial, he waives his right against self-incrimination, and the government will cross-examine him on all matters reasonably related to the subject matter of him testimony. See, e.g., Fitzpatrick v. United States, 178 U.S. 304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'"); United States v. Black, 767 F.2d 1334, 1341 ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).

The scope of cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). The defendant has no right to avoid cross-examination on matters that call into question his claim of innocence. United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The government, however, may introduce evidence should defendant "open the door." See United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995), as amended on denial of reh'g (Apr. 11, 1995) ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue.").

### E. Photographs and Maps

The government will seek to introduce video and photographs of defendant's interaction with officers on August 15. Photographs are generally admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977).

Photographs should be admitted so long as they fairly and accurately represent the event or object in question. See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). For example, photographs may be authenticated by a witness who "identif[ies] the scene itself [in the photograph] and its coordinates in time and place." See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989) (internal quotation marks omitted). Also, "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

The government also may seek to display maps obtained from Google Earth and Google Maps as demonstratives to aid the jury in their understanding of where the towing occurred. The maps will be authenticated by an officer who was a percipient witness as to the area the maps depict. The admission of demonstrative evidence, such as maps, that assists the understanding of the trier of fact is a matter committed to the sound discretion of the trial court. United States v. Turner, 528 F.2d 143, 167-68 (9th Cir. 1975). The Court may properly admit maps from Google Earth because they are not hearsay, especially when a witness familiar with the area testifies about them. United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109 (9th Cir. 2015). The Court may also take judicial notice of maps, including online maps and satellite images. See United States v. Perea-Rey, 680 F.3d. 1179, n.11 (9th Cir. 2012).

F. **Lay Law Enforcement Testimony**

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (cleaned up). Lay opinion testimony by law enforcement officers is admissible and is not necessarily expert testimony within the meaning of Rule 16(a)(1)(G). See United States v. Barragan, 871 F.3d 689, 703-04 (9th Cir. 2017) (agent's interpretation of conversation based upon direct knowledge constitutes lay testimony).

1    "[A]n investigator who has accumulated months or even years of experience with
2    the events, places, and individuals involved in an investigation necessarily draws on that
3    knowledge when testifying; indeed, it is those out-of-court experiences that make the
4    witness's testimony helpful to the [trier of fact]." United States v. Gadson, 763 F.3d
5    1189, 1209 (9th Cir. 2014). Rule 16 notice is not required for the opinions of lay
6    witnesses. See Fed. R. Evid. 701; see also United States v. Moreno, 243 F.3d 551, 551
7    (9th Cir. 2000). To the extent the United States offers lay opinions, they are admissible.

8    Here, the government may seek to admit the lay testimony of HSI Analyst S.L.,
9    who reviewed social media footage of defendant's confrontation with the officers. HSI
10   Analyst S.L. will testify, based on his repeated viewing of such video, as to hard-to-hear
11   statements that defendant made to officers right before he got into his tow truck to tow
12   the government SUV, including that defendant stated, "you can't have your car right
13   there," while he gestured towards the government SUV, and "I'm gonna tow your shit,"
14   and "ok, alright, play your games, bet," as he walks away from the officers and in the
15   direction of the government car.

16   The Ninth Circuit has repeatedly "held that an officer who has extensively
17   reviewed a video may offer a narration, pointing out particulars that a casual observer
18   might not see." United States v. Torralba-Mendia, 784 F.2d 652, 659 (9th Cir. 2015)
19   (affirming officer's narration of video of people and cars visiting a human smuggling
20   spot, based on the officer's "repeated viewing of the recordings" as a proper lay
21   opinion). In United States v. Begay, the Ninth Circuit affirmed an officer's narration of
22   a video tape, finding that the officer's testimony, based on his extensive rewatching of
23   the video, would be helpful to the jury because a jury "viewing a videotape of a
24   demonstration involving over 200 people would likely not see certain details, given the
25   tremendous array of events all occurring simultaneously." 42 F.4d 486, 502-03 (9th Cir.
26   1994) (holding this was proper lay opinion that did not invade the province of the jury).
27   Here too, where the bystander video shows a flurry of activity and multiple raised
28   voices, Analyst S.L.'s testimony highlighting defendant's recorded statements "could

help the jury discern correctly and efficiently the events depicted in the video tape;" to have the jury itself conduct the same painstaking review would be "an extremely inefficient use of the jury's and the court's time." Id.

### G. Affirmative Defenses and Reciprocal Discovery

Defendant has not given notice of her intent to rely on any defense of entrapment, mental incapacity, alibi, self-defense, or any other affirmative defense, despite the government's request for such notice of intent. Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense.

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on defendants a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c). In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit that party from introducing the undisclosed evidence," or it may "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) and (D). To the extent defendant may attempt to introduce or use any evidence at trial that she has not produced to the government, such documents should be excluded. See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

If defendant serves defense discovery on the government mid-trial, the government further seeks leave from the Court to have adequate time to review the provided discovery, run necessary criminal background checks, and request offers of proof from the defense as to any previously undisclosed witnesses.

To date, defendant has not produced any reciprocal discovery.

**H.    Jury Nullification**

As detailed in the governments motion in limine (Dkt. 24), the government also objects to any evidence and/or argument introduced for the purpose of jury nullification, including concerning the unrelated arrest of third-party T.M. and national immigration policy and its effect on the community and/or individuals.

**V.    CONCLUSION**

The government respectfully requests leave to supplement this Trial Memorandum, as appropriate.